**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| City Bay Capital, LLC,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>BH&G Holdings, LLC, et al.<br><br>　　　　　　　　Defendants. | Case No. 2:21-cv-01790-RFB-EJY<br><br>**ORDER** |

### I.     INTRODUCTION

Before the court are two motions: Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Plaintiff's Motion for Leave to File Document. ECF Nos. 56, 60. For the following reasons, the Court grants the motion to dismiss, and does not have jurisdiction over Plaintiff's Motion for Leave to File Document.

### II.    BACKGROUND

Plaintiff City Bay Capital ("City Bay") commenced this breach of contract action by filing the Complaint on September 28, 2021. ECF No. 1. City Bay brought only state-law claims but asserted that this Court had diversity jurisdiction. In November 2021, Defendants moved to dismiss this action for lack of subject matter jurisdiction as well as for failure to state a claim. ECF Nos. 7, 8. Specifically, Defendants argued that City Bay was a citizen of New York through its sole member, Michael Zysman, and that two members of Defendant MultiGreen Properties, LLC--Steven Morries and William Eimicke—were also citizens of New York. Defendants further argued

that even if Zysman could establish Florida domicile, the parties would still lack diversity because two of the other Defendant LLCs were partially or fully owned by Floridians, including the Hartmut Malluche Family Trust (through its trustee Dr. Hartmut Malluche) and Ricardo A. Melero. City Bay responded with evidence that Zysman had been domiciled in Florida since January 2021, eight months prior to the commencement of litigation.

On June 7, 2022, the Court held a hearing on the Motions to Dismiss. ECF No. 25. The Court found that City Bay had provided sufficient evidence to establish diversity through the Florida domicile of Zysman, City Bay's sole member through an intermediary LLC, and subsequently denied the motion with prejudice as it related to Zysman. The Court then denied the motion without prejudice as to Dr. Malluche and Melero. The Court provided the parties with 120 days of jurisdictional discovery to proceed in parallel with fact discovery. The Court directed the parties to take depositions of Melero and Dr. Malluche.

The discovery period was extended to nine months by stipulation of the parties. ECF No. 33. On March 9, 2023, Plaintiffs took a deposition of Meloro and the jurisdictional discovery period concluded shortly after.

After the jurisdictional discovery period expired, Defendants filed their renewed motion to dismiss as it relates to jurisdiction on June 23, 2023. ECF No. 56. The Motion was fully briefed on July 14, 2023. On August 11, 2023, Plaintiff filed the instant Motion for Leave to File a Sur-Reply. ECF No. 60. This Motion was fully briefed on September 1, 2023. ECF No. 68. On August 16, 2023, a Notice of Bankruptcy was filed stating that an involuntary petition pursuant to 11 U.S.C. § 303 was filed as to Defendant BH&G Holdings.

On December 8, 2023, the law firm Munger, Tolles & Olson LLP – Defendants' counsel – filed a Notice of Motion and Motion to Withdraw. ECF No. 74. On December 9, 2023, the Honorable Elayna M. Youchah, United States Magistrate Judge, granted the motion. ECF No. 75. On January 4, 2024, the law firm Wilson Elser Moskowitz Edelman & Dicker LLP – Defendants' remaining counsel – filed a Motion to Withdraw as Counsel of Record. ECF No. 77. On January 5, 2024, the Court granted the motion. ECF No. 78.

On January 2, 2024, the Bankruptcy Court for the District of Nevada entered an order dismissing the involuntary petition against BH&G Holdings and closing the bankruptcy case. In re BH&G Holdings, LLC, No. 23-13321-NMC (Jan. 2, 2024).[1] On January 19, 2024, the Court held a hearing on the Motion to Dismiss. Plaintiff's Counsel appeared, but Defendants were not present. The Court continued the hearing and took the Motion to Dismiss under advisement.

On February 9, 2024, Plaintiff filed a Motion to Extend Discovery Deadlines. Judge Youchah granted Plaintiff's motion and ordered Plaintiff to contact Defendants to ensure delivery of the order. Judge Youchah further ordered that if each Defendant has not appeared by or before March 13, 2024, a status report must be filed on March 20, 2024, that explains how, if at all, this case may proceed and against any of the Defendants. ECF No. 82. Plaintiff filed a notice with the Court describing the efforts to contact Defendants on February 20, 2024. On February 27, 2024, the law firm of Carlyon Cica Chtd filed a Notice of Appearance on behalf of BH&G Enterprises, LLC, and Tru Development LLC. The next day, Judge Youchah ordered the parties represented by counsel to submit a status report by March 13, 2024, informing the Court how this case will move forward. On March 13, 2024, Plaintiff along with Defendants BH&G Holdings and Tru Development filed a status report with a proposed discovery plan. ECF No. 87. As of January 5, 2024, the remaining Defendants have remained unrepresented and have not retained new counsel.

### III.   LEGAL STANDARD

**A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction**

To invoke a federal court's limited subject matter jurisdiction, a complaint need only provide "a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). Ordinarily, the court will accept the plaintiff's factual allegations as true unless they are contested by the defendant. Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014). A defendant may move to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). If

---

[1] This matter is therefore no longer stayed against BH&G Holdings. In re Sewell, 345 B.R. 174 (B.A.P. 9th Cir. 2006) ("Dismissal of a bankruptcy case generally terminates the automatic stay") (citing 11 U.S.C. § 349(b)(3)), 11 U.S.C. § 362(c)).

subject matter jurisdiction is challenged, the burden is on the party asserting jurisdiction to establish it. In re Dynamic Random Access Memory Antitrust Litig. v. Micron Technology, Inc., 546 F.3d 981, 984 (9th Cir. 2008) (citations omitted).

"Under Rule 12(b)(1), a defendant may challenge the plaintiff's jurisdictional allegations in one of two ways." A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" Leite, 749 F.3d at 1121–22 (quoting Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6)." Id.

"A "factual" attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." Id. (citing Safe Air, 373 F.3d at 1039). "When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with 'competent proof,'" id. (quoting Hertz Corp. v. Friend, 559 U.S. 77, 96–97, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010)), "under the same evidentiary standard that governs in the summary judgment context." Id. (citing Norse v. City of Santa Cruz, 629 F.3d 966, 973 (9th Cir. 2010)) (en banc)); Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1559 (9th Cir.1987); Fed. R. Civ. P. 56(c).

"The plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." Id. (citing Harris, 682 F.3d at 851). However, unlike summary judgment, "if the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself," so long as the disputed factual issues do not go to the merits of the case. Id. (citing Safe Air, 373 F.3d at 1039–40); Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir.1983); Thornhill, 594 F.2d at 733.

IV.   DISCUSSION

Courts have an obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999) ("subject-matter delineations must be policed by courts on their own initiative even at the

highest level.") (quoting FRCP 12(h)(3) ("Whenever it appears ... that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). For the reasons stated below, the Court has determined based on the record before it, that it lacks subject matter jurisdiction and therefore dismisses the case.

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendants have raised a "factual attack" on subject matter jurisdiction. None of the factual disputes go to the merits of the case. Therefore, the Court may resolve factual issues by reviewing evidence outside the pleadings. The burden is on Plaintiff to present competent evidence and assert jurisdiction by a preponderance of the evidence. In determining the citizenship of an LLC, the Ninth Circuit has held, "an LLC is a citizen of every state of which its owners/members are citizens." Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006).

Defendants argue that MGP Apex 582 Multifamily, LLC ("Multifamily") is a Florida citizen through the following jurisdictional chain. First, Melero is a citizen of Florida and a member of HIS Capital Group Holdings, LLC ("HIS Capital"). In turn, HIS Capital is a member of HIS Investment Management, LLC. HIS Investment is a General Partner of HIS Real Estate Fund II, LP ("HIS REF II"). Finally, HIS REF II is a member of MGP Apex 582 Multifamily, LLC. Defendants also argue that a second defendant, BH&G Holdings, is also a citizen of Florida through this chain because Multifamily is a member of BH&G. The parties only dispute two links in the chain: whether Melero is a member of HIS Capital Group Holdings LLC and whether HIS Real Estate II is a Member of MGP Apex Multifamily.

    a.   Melero is a member of HIS Capital Group Holdings, LLC

In support of their position, Defendants submit HIS Capital Group Holdings, LLC's Amended Operating Agreement (amended on May 19, 2017), which provides that Melero is HIS Capital's sole member. Defendants reference Melero's sworn deposition testimony in which he testified that "as of September 28th, 2021," he "personally" was "a member of HIS Capital Group Holdings LLC." He also stated that he, in his "personal capacity," "possess[es] a 100 percent interest in HIS Capital Group Holdings, LLC." Melero further testified that there had been no

change to the ownership structure of "HIS Capital Group Holdings . . . since May of 2017." Defendants also point to City Bay's exhibits; a 2017 name change filing with the Florida Secretary of State which changed the name of HIS Capital Group Tuscany to HIS Capital Group Holdings and was signed by Melero.

City Bay does not submit any affirmative evidence rebutting HIS Capital's citizenship. Instead, City Bay questions the authenticity of the Operating Agreement. Specifically, Plaintiff takes issue with the fact that HIS Capital was not a recognized entity by Florida Secretary of State until October 2017, five months after Melero executed the Amended Operating Agreement. Additionally, they point to the fact that HIS Capital came into existence as a result of a name change, but HIS Capital's predecessor HIS Capital Group Tuscany, LLC was organized on May 24, 2017, five days after the Amended Operating Agreement was executed. City Bay questions why Melero would sign an Operating Agreement for an entity that apparently did not exist. City Bay further argues that the signature block on the Amended Operating Agreement is clearly inserted or superimposed. City Bay also presents public filings, which show that the address listed on the Amending Operating Agreement was purchased by HIS Capital approximately two years after the operating agreement was signed. Finally, City Bay argues that Melero's contradicted himself because he made one statement saying he "may" have possessed ownership in HIS Capital.

Considering the record, the Court finds that Melero is a citizen of Florida and that Melero is a member of HIS Capital Group Holdings, LLC—therefore HIS Capital is a Florida citizen too.

First, Rick Melero is a citizen of Florida. ECF No. 56-3. Melero's deposition testimony revealed that Davenport, Florida has been his primary address for the last three years; all his previous primary residences have been in Florida dating back to 1992; and his business is located in Orlando, Florida. Melero also testified that as of the date City Bay filed this action, it was his "intention to remain a resident of Florida indefinitely," because he is "married to a woman that is going to be a Floridian for the rest of her life most likely, so I don't have any intention of moving." This is corroborated by Melero's voting history which was already before the Court and establishes that Melero has voted in Florida elections dating back to 2008. Plaintiffs further do not dispute

Melero's citizenship in their opposition. See Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001) (holding that an individual's citizenship is determined by place of domicile and "[a] person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return.").

Second, Melero is also a member of HIS Capital. Melero testified extensively under oath about his membership in HIS Capital Group Holdings. Although Melero's signature on HIS Capital's operating agreement appears superimposed or pasted from another document, this does not change the legal effect of the document or the remaining other information on the document that lists Melero's name and address three other times and lists him as the sole Member. Melero also testified that he often has his staff duplicate documents, including operating agreements. City Bay's references to discrepancies with the timing of incorporation in relation to the Operating Agreement do not persuade the Court that Melero is not a member of HIS Capital. The Amended Operating Agreement for HIS Capital Group Holdings was executed just five days after its predecessor-in-name HIS Capital Group Tuscany LLC was organized with the Secretary of State. This is not an unreasonable timeline considering that "filing of the articles does not, by itself, constitute commencement of business by the company." Nev. Rev. Stat. § 86.151. The Court also finds it highly significant that it was Melero himself who filed for a name change with the Secretary of State five months later, changing the name of "HIS Capital Group Tuscany" to "HIS Capital Group Holdings." City Bay makes no contention as to what the citizenship of HIS Capital would be if Melero were not its member. To the contrary, the evidence establishes that HIS Capital Group is a Florida entity and none of the HIS Capital filings before the Court discloses a member other than Melero. Therefore, City Bay has failed to meet its burden in proving by a preponderance of evidence that HIS Capital Group is not a Florida citizen.

    b. <u>HIS Real Estate II is a member of MGP Apex Multifamily</u>

Defendants provide the following evidence to support their contention that HIS REF II is a member of Multifamily. First, they have submitted HIS REF II's 2020 K-1/Form 1065 and HIS

REF II's 2021 K-1/Form 1065.[2] Both K-1s were issued from Multifamily to its member, HIS REF II for the tax years 2020 and 2021. Defendants also filed a Supplemental Sworn Declaration from Randy Norton, a manager of Multifamily, who declared that "on September 28, 2021, the members of Multifamily included HIS Real Estate Fund II, LP, a limited partnership with an address of 2151 Consulate Drive, Suite 6, Orlando, Florida." ECF No. 12-1 at 2. Defendants also point to Melero's sworn deposition testimony where he stated that he possessed an ownership interest in Multifamily; confirmed that as of September 28, 2021, HIS REF II was a member of Multifamily; and stated that Multifamily's K-1/Form 1065, naming HIS Real Estate Fund II as a member, "accurately reflect[ed] HIS Real Estate Fund II's membership in the Multifamily LLC."

In response, City Bay provides Multifamily's Operating Agreement dated February 19, 2019 as well as Multifamily's First Amendment to the Operating Agreement, dated April 24, 2020. The Operating Agreement lists "Green Mesa Capital, LLC" as the "Sole Member," but does not provide any language indicating the addition of another member. City Bay acquired these agreements through subpoena from a third party, Trez Capital. Plaintiffs argue that no further operating agreements are on file with the Nevada Secretary of State and therefore HIS REF II cannot be a member of Multifamily.

Based on its review of the briefs and the evidence submitted into the record, the Court finds that HIS REF II was more likely than not a member of Multifamily at the time the litigation commenced, September 28, 2021.

Importantly, the 2021 K-1 Form post-dates the 2019 and 2020 Multifamily Operating Agreements. Therefore, unlike the Operating Agreements, the 2021 K-1 Form reflects the membership of Multifamily for the year the litigation commenced. Defendants' contention that HIS REF II is a member of Multifamily is bolstered by the language of the operating agreement, which permits the later the addition of new members. ECF No. 57-2 at 4 ("Sole Member" provides

---

[2] A "K-1" or Form 1065 is used as part of a tax return to report the partner's share of income resulting from the partnership, or an LLC which is classified as a partnership. Internal Revenue Serv., *About Form 1065, U.S. Return of Partnership Income*, https://www.irs.gov/forms-pubs/about-form-1065 (Feb. 1, 2024); Internal Revenue Serv., *Instructions for Form 1065 (2023)*, https://www.irs.gov/instructions/i1065#en_US_2023_publink11392vd0e502 (Feb. 7, 2024) ("Some members of other entities, such as . . . LLCs that are classified as partnerships, may be treated as limited partners for certain purposes.").

8

that "Member means the Sole Member and any Person who is subsequently admitted as a member of the Company.").

City Bay's reference to an absence of operating agreements with the Secretary of State is unavailing. As Defendants point out, Nevada law does not require LLCs to file their operating agreements with the state. Instead, LLCs are only required to file articles of organization—and may omit "names and addresses of the past and present members" from the articles of organization. Nev. Rev. Stat. §§ 86.151, 86.221.

City Bay questions the validity of the K-1s based on the fact that certain sensitive financial tax information is redacted and Defendants have not verified that these forms were actually filed with the IRS. But the Court can discern that HIS REF II is a member of Multifamily based upon the unredacted information and the remaining arguments are based on speculation—not affirmative rebuttal evidence. Moreover, Defendants have presented a sworn declaration from a manager of Multifamily that HIS REF II was a member of Multifamily on the date the litigation commenced as well as sworn deposition testimony from Melero who also testified that HIS REF II was a member of Multifamily.

   c.   <u>Multifamily is a Member of BH&G Holdings</u>

Finally, City Bay does not dispute that Multifamily is itself a member of BH&G Holding. Because Multifamily, as described above, is a citizen of Florida, BH&G Holdings is also a citizen of Florida through its member, Multifamily. Therefore, two Defendants, Multifamily and BH&G are citizens of the same state as City Bay and the Court must dismiss the case for lack of subject matter jurisdiction.

**B. Motion for Leave to File Sur-Reply**

City Bay seeks leave of this Court to file a sur-reply for the purpose of alerting the Court to allegations of discovery violations lodged against Mr. Melero by the opposing party in an unrelated Florida state court action. City Bay also seeks to comment on the 2021 K-1 Form, which Defendants had produced in their Reply in response to City Bay's own assertion that Defendants failed to provide this document. As the Court has already found it lacks subject matter jurisdiction,

it may not rule on the Motion for Leave to File Sur-Reply. However, the Court notes that it considered all of City Bay's arguments within the sur-reply. The Court has already addressed Plaintiff's arguments with respect to the K-1 Form above. The Court further finds that a partisan legal brief from an unrelated state court action in Florida has little if any probative value on the instant controversy. See, e.g., Comstock v. Humphries, 786 F.3d 701, 709 (9th Cir. 2015) ("arguments in briefs are not evidence."); United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir.1992) (a court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

### V.     CONCLUSION

In sum, the Court finds by a preponderance of evidence that MGP Apex Multifamily and BH&G Holdings are both citizens of Florida. Having already found that City Bay is a citizen of Florida through its sole member, Michael Zysman, this Court is without subject matter jurisdiction and must dismiss the case.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (ECF No. 56) is GRANTED. This matter is dismissed without prejudice. The Clerk of Court is instructed to close this case accordingly.

DATED: March 22, 2024.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**